# Plains Township's Appeal.

*Municipalities — Indebtedness—Special tax levy— Judgment—Act of March* 31, 1864, *P. L.* 162.

The Act of March 31, 1864, P. L. 162, entitled " An act relating to the collection of district and township debts in the several counties of the commonwealth," did not provide a new tribunal for the trial of disputed claims growing out of contracts, nor invest the court of quarter sessions with jurisdiction to adjudicate controverted demands against the township. The proceeding here prescribed presupposes that the indebtedness has been previously ascertained and fixed, as by judgment, the auditor's settlement, or otherwise, so that the decree of the court can be regarded only as executionary.

Judgments against a township are, in the absence of jurisdictional defects conclusive, and cannot be attacked in a collateral proceeding in the court of quarter sessions to compel the levy of the special tax to pay the judgments. The mere fact that the aggregate of the judgments exceeded two per cent of the assessed value of the taxable property of the township, is not conclusive of the invalidity of the demands upon which the judgments were founded.

A tax levy in a township must be based upon the assessed valuation as revised and equalized by the county commissioners, and not upon the return of the assessors to the commissioners. During the pendency of the appeal in the common pleas the tax must be paid upon the valuation fixed

by the board of revision, but when that appeal is determined, the valuation for purposes of taxation becomes that fixed by the court.

Argued May 12, 1902. Appeal, No. 19, Jan. T., 1903, by Plains Township from order of Q. S. Luzerne Co., April T., 1894, No. 341, ordering a levy of a special tax in the Matter of the Appeal of Plains Township. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Petition for mandamus.
The opinion of the Superior Court states the case.

*Error assigned* was the order directing the levy of the special tax.

*Chas. E. Terry, John M. Garman* and *Alexander Farnham,* for appellant.—Township taxes are required to be levied upon the last adjusted valuation fixed by the county commissioners: Delaware, etc., Canal Co. v. Walsh, 11 Phila. 587; Moore v. Taylor, 147 Pa. 481; Hughes v. Kline, 30 Pa. 227.

The remedy for illegal taxation under a general power to tax is by appeal to the proper appellate tribunal; when no appeal is given the courts cannot reverse the judgment of the tax officers: Stewart v. Maple, 70 Pa. 221; Carlisle School District v. Hepburn, 79 Pa. 159; Hamlin v. Peck, 135 Pa. 493; Brown's App., 111 Pa. 72.

The appellees, in contracting with the township, were bound to take notice of its financial condition and the existing assessment: Nankivil v. Yeosock, 7 Kulp, 518; Borough of Millerstown v. Frederick, 114 Pa. 435; O'Malley v. Olyphant Borough, 198 Pa. 525.

*E. A. Lynch, William S. McLean* and *John McGahren,* with them *George R. McLean* and *E. K. Little,* for appellee.—The judgments were conclusive: Marsteller v. Marsteller, 132 Pa. 517; Emery v. Nelson, 9 S. & R. 12; Lawver v. Walls, 17 Pa. 75; Pennock v. Kennedy, 153 Pa. 579; Myers v. Kingston Coal Co., 126 Pa. 582; Armstrong County v. Overseers of Plumcreek Twp., 158 Pa. 92; Bolton v. Hey, 168 Pa. 418; Hartman v. Pittsburg Incline Plane Company, 11 Pa. Superior Ct. 438; Schwan v. Kelly, 173 Pa. 65; Lancaster v. Fres-

coln, 192 Pa. 452; Aurora City v. West, 7 Wallace, 82; Beloit
v. Morgan, 7 Wallace, 619; Rockwell v. Tupper, 7 Pa. Supe-
rior Ct. 174; District of Rock Rapids v. Miller, 92 Iowa, 676
(61 N. W. Repr. 376).

Even if the evidence established the fact that when the debts
were contracted, upon which the judgments were rendered, they
were in excess of the constitutional limit, nevertheless the mere
obtaining of the judgments by mere default does not show that
they were obtained by fraud or collusion, there being no evi-
dence of fraud or collusion in obtaining the same: Thompson
v. District of Allison, 102 Iowa, 94 (70 N. W. Repr. 1093);
Jenkins Township v. Yatesville Borough, 1 Kulp, 190; In re
Indebtedness of Wilkes-Barre Township, 4 Kulp, 83; In re
Indebtedness of Marcy Township, 9 Kulp, 424; In re Indebted-
ness of Wilkes-Barre Township, 8 Kulp, 516.

The commissioners sitting as a board of revision have no power
to make assessments; they cannot change the assessors' return
arbitrarily and without any evidence: Respublica v. Deaves,
3 Yeates, 465; Stewart v. Shoenfelt, 13 S. & R. 378; Frantz
v. Mueller, 35 Ohio, 397; Shove v. Manitowoc, 57 Wis. 5
(14 N. W. Repr. 829); Fond du Lac Water Company v. City
of Fond du Lac, 82 Wis. 322 (52 N. W. Repr. 439).

The value of property at the time of the assessment is the
true criterion of the correctness of the valuation, for the pur-
poses of taxation: Ferguson v. Lycoming Co., 8 Pa. C. C. Rep.
667.

It has been held that the board of review has no power to
arbitrarily disregard the assessors' return and make a new as-
sessment: Hodges v. Board of Appeal, 2 Law Times (N. S.),
167.

OPINION BY W. D. PORTER, J., July 10, 1902:

The Act of March 31, 1864, P. L. 162, entitled "An act re-
lating to the collection of district and township debts in the
several counties of the commonwealth," did not provide a new
tribunal for the trial of disputed claims growing out of con-
tracts, nor invest the court of quarter sessions with jurisdiction
to adjudicate controverted demands against the township.
"The proceeding here prescribed presupposes that the indebted-
ness has been previously ascertained and fixed, as by judgment,

the auditor's settlement, or otherwise, so that the decree of the court can be regarded only as executionary: " Lehigh Coal & Navigation Company's Appeal, 112 Pa. 360 ; Hower's Appeal, 127 Pa. 134; In re Indebtedness of Wilkes-Barre Township, 4 Kulp, 83. The court below refused to order a special tax for the payment of any claims not evidenced by judgment, and made a decree directing the proper officers to levy and collect a special tax, in an amount which was, by the court, deemed sufficient to discharge the obligations of the township evidenced by various judgments. The aggregate amount of these judgments was $63,621.68 ; the assessed valuation of the taxable property of the township, last preceding this decree, as fixed and returned by the assessors to the county commissioners, was $4,193,521, but after this assessment had been revised, equalized and corrected by the county commissioners sitting as a board of revision, the total assessed value of the taxable property in the township was $1,050,124. The court decreed that the tax should be levied and collected upon the assessments as returned by the assessors, and not as corrected by the board of revision. The assignments of error raise two questions : 1. Can the township authorities be required to levy and collect a special tax to pay judgments against the township exceeding in the aggregate more than two per cent of the assessed value of its taxable property ? 2. Is the assessed value of taxable property the valuation as at first returned by the assessors, or that fixed by the correction of the return, and the disposal of the various appeals, by the county commissioners sitting as a board of revision ?

The judgments against Plains township were many in number, most of them had been entered by the court of common pleas of Luzerne county, but a considerable number had been entered by justices of the peace. There has been no suggestion that any jurisdictional defect appeared in the record of any of these judgments, nor has there been any intimation as to any one of them that the tribunal in which it was entered did not have jurisdiction of the parties and of the subject-matter. The several actions were brought against the township to recover an indebtedness alleged to be due; whether the township was legally indebted necessarily involved the question of the validity of the plaintiff's claim under the constitution and laws of the

commonwealth; the judgment in favor of the plaintiff was an adjudication that the sum was legally due and owing. "A debt due on a judgment cannot be said, in legal phraseology, to be a debt arising on a contract; it is a sum of money due by the decree of a court or magistrate:" Ellsworth v. Barstow, 7 Watts, 314. The power of the township to contract the obligation was legally cognizable in each one of the proceedings which resulted in a judgment against it, and the entry of the judgment was, so far as that demand was concerned, a judicial determination of the question. The judgment until reversed is conclusive of the right of the plaintiff to recover and the obligation of the township to pay. Our attention has not been called to any evidence which would have warranted a finding that these judgments were entered through collusion. What has been judicially determined shall not again be made the subject of controversy, and the township was not in a position in this proceeding in the court of quarter sessions to make a collateral attack upon the judgments which had been entered in other tribunals: Emery v. Nelson, 9 S. & R. 12; Hazelett v. Ford, 10 Watts, 101; Lawver v. Walls, 17 Pa. 75; Commonwealth v. Trout, 76 Pa. 379; Myers v. Kingston Coal Company, 126 Pa. 582; Marsteller v. Marsteller, 132 Pa. 517; Pennock v. Kennedy, 153 Pa. 579; Armstrong County v. Overseers of Plumcreek Twp., 158 Pa. 92; Bolton v. Hey, 168 Pa. 418; Schwan v. Kelly, 173 Pa. 65; Lancaster v. Frescoln, 192 Pa. 452; Hartman v. Pittsburg Incline Plane Company, 11 Pa. Superior Ct. 438. The mere fact that the aggregate of the judgments exceeded two per cent of the assessed value of the taxable property of the township was not conclusive of the validity of the demands upon which the judgments were founded; the original debt may have been incurred before the constitutional limitation went into effect, or it may have been incurred with the assent of the electors, at a public election in the manner provided by law. The assessed valuation of the taxable property may have been much higher at the time the township incurred this indebtedness, or the township may have been divided and taxable property thus taken from it since the debt originated; an impoverishment or division of the township would not invalidate its existing obligations. We are of opinion that the judgments were conclusive of the liability of the township to pay.

The difference between the value of the taxable property of this township as returned by the assessors and the valuation as revised by the county commissioners leaves a wide margin for surmise as to what may have been the valuations in former years. The evidence as to those former valuations is not before us, and it would not be part of the record even if it had been printed. The present valuation is, however, an element which must be considered, for the amount collected will depend upon the rate of the levy and the valuation upon which it is based. The Act of April 15, 1834, P. L. 511, section 27, provides that rates laid for township purposes shall be levied upon the basis of the last adjusted valuation made for the purpose of regulating county rates and levies. The 6th section empowers the county commissioners to correct the returns of the assessors, and the 13th section empowers them to hear appeals and grant relief. The Act of May 15, 1841, P. L. 393, section 4, required the assessors and assistant assessors to assess all objects of taxation according to the actual value thereof, and empowered the county commissioners " if they believe any property or thing made taxable, has been assessed and valued, below its value, to raise the same to the actual value thereof, or if the same has been assessed and valued above its value, to reduce the same thereto." The 5th section empowers the commissioners, after any assessment has been returned and an appeal taken therefrom, " if they deem an abatement proper," to make the same. The Act of July 27, 1842, section 10, P. L. 441, constituted the county commissioners and associate judges of each county a " board of revision" and the following sections of the act defined the powers of that board ; among which were to receive the returns of the assessors, and proceed to examine and inquire whether the same had been made in conformity with the laws of this commonwealth. In the 13th section of that statute is this provision : " They shall receive and consider the written communication of any taxable inhabitant of the county relative to any property which such taxable inhabitant shall believe to have been reduced too low, and on the day appointed for determining whether any property has been reduced too low, or reduce the same if too high, they shall proceed to raise the price or valuation of any property which they shall believe to have been reduced too low,

. . . . they may adjourn from day to day until the whole of such valuation shall have been revised, raised and equalized." Section 14 enacts that " when the whole of the valuation of the assessors has been raised, revised and equalized, in conformity with the foregoing section, the same proceeding shall be had in reference to notice, appeals and corrections, which are now had by the laws of this commonwealth, excepting only that the board of revision, instead of the county commissioners, shall hear and decide upon all appeals." The act of April 29, 1844, section 41, repealed so much of the act of 1842 as constituted the associate judges members of the board of revision, thus leaving the county commissioners to constitute that board. The result of this legislation is to give the county commissioners power to revise, raise or reduce any valuation returned by the assessors. The Act of April 19, 1889, P. L. 37, gives, to any owner of taxable property who may feel aggrieved from the valuation of such property, the right of an appeal from the decision of the county commissioners or board of revision, to the court of common pleas of the county within which such property is situated. It is not, therefore, the return of the assessors to the commissioners which is the valuation upon which taxation is to be based. The valuation for purposes of taxation is the assessment corrected by the county commissioners, after they as a board of revision have disposed of all appeals. During the pendency of an appeal in the common pleas, the tax must be paid upon the valuation fixed by the board of revision, but when that appeal is determined the valuation for purposes of taxation becomes that fixed by the court: Appeal of William H. Brown, 111 Pa. 72; Hamlin v. Peck, 135 Pa. 493 ; Moore v. Taylor, 147 Pa. 481 ; Delaware & Hudson Canal Company v. Anthony Walsh, 11 Philadelphia, 587.

The conclusion of the learned judge of the court below was right on the main question, that a tax should be levied sufficient to pay off the judgments against the township, together with the expenses of collection and costs of proceeding. The decree, however, must be modified for the levy must be based upon the assessed valuation as revised and equalized by the county commissioners.

The order of the court below is modified and the record is remitted with direction to enter an order in accordance with the foregoing opinion.