215　　209|
e 33 SC ¹283|

## Jackson, Appellant, *v.* Thomson.

*Res adjudicata—Pleadings—Ejectment—Bill in equity.*

Where a prior adjudication in equity is pleaded as a bar to an action of ejectment between the same parties, the court will examine the pleadings and the decree of the court in the equity suit to determine precisely what was adjudicated in that suit. In such an examination the court will exclude all extraneous questions not raised by the pleadings, although such questions may have been injected into the suit collaterally by the counsel of the parties.

Where, in an action of ejectment, a prior equity suit between the same parties is set up as a bar, the plea of res adjudicata will not prevail where it appears that the purpose of the equity suit was to have a deed absolute on its face declared to be a conveyance of land as collateral security for the payment of a debt, while the evidence offered in the ejectment showed that the purpose of the ejectment was to have the defendant declared a trustee ex maleficio.

In such a case the plea of former adjudication cannot be sustained, as the same evidence will not support a cause of action which requires proof of an express parol agreement to reconvey real estate, and a cause of action which requires proof that the holder of the title to the real estate is a trustee ex maleficio. The one requires proof, not of fraud in the grantee, but of

an express contract which alone would entitle the party to recover; the other is established by proof of fraud of the grantee holding the title which converts him into a trustee for the beneficial owner.

Argued March 13, 1906. Appeal, No. 70, Jan. T., 1906, by plaintiffs, from judgment of C. P. Sullivan Co., Sept. T., 1902, No. 49, on verdict for defendants in case of W. W. Jackson et al. v. Rush J. Thomson and Walter B. Gunton. Before MITCHELL, C. J., FELL, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Ejectment for land in Cherry township. Before WHEATON, P. J., specially presiding.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for defendants. Plaintiff appealed.

*Error assigned* was in directing a verdict for defendants on the ground that the case was res adjudicata by former equity proceedings between the parties.

*John G. Johnson*, with him *Alphonsus Walsh, E. J. Mullen* and *Seth T. McCormick*, for appellants.—The fact that the court below in the opinion filed referred in a casual manner to the fact that the evidence showed that the consideration for the deed was in part the private liabilities of the executors themselves and in part the debts of the estate of George D. Jackson, deceased, does not make the question of the validity of the deed or the adequacy of the consideration res adjudicata : Siebert v. Steinmeyer, 204 Pa. 419 ; Schwan v. Kelly, 173 Pa. 65 ; Forcey's App., 106 Pa. 508 ; Tams v. Lewis, 42 Pa. 402; Martin v. Gernandt, 19 Pa. 124 ; Cavanaugh v. Buehler, 120 Pa. 441.

To make a decree dismissing a bill conclusive, the record must show that the matter claimed to be concluded was the very matter passed upon : Williams v. Row, 62 Pa. 118 ; Sheble v. Strong, 128 Pa. 315 ; Lewis v. Baker, 151 Pa. 529 ; Cawley's Estate, 162 Pa. 520 ; Davis v. Brown, 94 U. S. 423.

The question of the power of the executors to make the deed to Thomson and the consideration therefor, was not raised in the pleadings in the equity case and hence could not properly have been passed upon by the court even if it had desired to

do so; nor would the same have been res adjudicata if such had been done: Larkins v. Lindsay, 205 Pa. 534; Williams v. Row, 62 Pa. 118.

Even if the question as to the validity of the deed had been raised by the pleadings, the court sitting in equity would have had no jurisdiction to decide the question of the legal title to the land in dispute ; nor would such a decision have been res adjudicata: Pitcairn v. Pitcairn, 201 Pa. 368 ; Keystone Electric Light, etc., Co. v. Peoples' Electric Light, etc., Co., 200 Pa. 366.

The cause of action in the ejectment is not the same as that in the equity case: Levy v. Solomon, 207 Pa. 478; Herman on Estoppel, 104 ; McQueen's App., 104 Pa. 595 ; Duquesne Bank's App., 74 Pa. 426; Hill v. Epley, 31 Pa. 331.

*I. McPherson*, with him *Rodney A. Mercur* and *Albert F. Heess*, for appellees.—The plaintiff cannot recover in this ejectment, because the title to the land in controversy was involved in a preceding equity case between the same parties, was material and indispensable in order to procure the relief sought therein, and the record and decree therein is conclusive thereof in this action: Westcott et al. v. Edmunds, 68 Pa. 34; Williams et al. v. Row et al., 62 Pa. 118 ; Lash v. Spayd, 141 Pa. 360 ; Haneman v. Pile, 161 Pa. 599.

Inasmuch as the title to the land embraced in this ejectment was involved in the equity case, and it was therein adjudicated that the deed, under which the defendants claim title in this action, conveyed the land in controversy to Rush J. Thomson absolutely, the adjudication embraced all matters and questions affecting his title under said deed, and is conclusive thereof in this action: Dutton's Est., 208 Pa. 350; Van Fleet's Former Adjudication, vol. 1, p. 264 ; Southern Minnesota Ry. Extension Co. v. R. R. Co., 55 Fed. Repr. 690 ; Schwan v. Kelly, 173 Pa. 65; Rauwolf v. Glass, 184 Pa. 237 ; Long v. Bank, 211 Pa. 165; Pennock v. Kennedy, 153 Pa. 577 ; Myers v. Kingston Coal Co., 126 Pa. 582.

OPINION BY MR. JUSTICE MESTREZAT, May 7, 1906 :

The principal and controlling question here is whether the adjudication in the equity case is a bar to the present

action of ejectment. To determine what was adjudicated in the former equity suit between the parties to that action, it will be necessary to refer to the pleadings and the decree of the court. " As this (former adjudication) is an estoppel by matter of record," says THOMSON, C. J., in Williams v. Row, 62 Pa. 118, " we must look to see what the record says, what it was that the plaintiffs claimed by their bill." And in Kelsey v. Murphy, 26 Pa. 78, where a former adjudication was set up as a defense, WOODWARD, J., delivering the opinion, says (p. 80): " The bill in chancery with which we have to do in this case was between the same parties as the present action. Was it directly upon the same point? Was the present cause of action included, and might it have been recovered in that suit? To determine this, recourse must be had to the pleadings then and now, and I proceed to contrast them."

George D. Jackson died testate November 23, 1879, and by his will he appointed Bernice W. Jackson and George C. Jackson his executors, to whom letters testamentary were issued December 15, 1879 by the register of Sullivan county. He devised all his property, real and personal, to his executors in trust, to sell, lease or convey the same and after payment of his debts, the residue was to be for the sole use and benefit of his wife, Bernice W. Jackson, for life, and after her death to be divided equally among his six children.

On July 9, 1897, four deeds were executed and delivered to Thomson, the defendant, one by Jackson's executors for an undivided interest in certain lands; one by the same parties for an undivided interest in trees, bark and timber on other lands; one by Bernice W. Jackson for timber, bark, trees, etc.; and one by George C. Jackson and wife for an undivided interest in certain lands. Subsequent to the execution and delivery of the deeds, and prior to bringing the equity suit, both of the executors died and W. W. Jackson and Blanche W. Sturdevant were appointed trustees by deed of all the parties interested in the estate. Thomson took possession of the land and timber conveyed to him by the deeds, cut and removed a large quantity of timber and bark and mined and removed coal from the lands.

After setting forth the above facts, the bill avers, inter alia, as follows: that at the time the several deeds were executed

and delivered to Thomson "it was upon the consideration and express agreement, entered into by and between the said grantors and the grantee therein named and the Citizens National Bank of Towanda, Pa., that the properties embraced in said deeds were not conveyed to the said grantee (Thomson) absolutely, but that the same were pledged by the grantors to him as collateral security for the payment of $8,100, which amount was loaned by the Citizens National Bank of Towanda, Pa., to the said George C. Jackson and Bernice W. Jackson . . . . and that said Rush J. Thomson was at the time, and still is, one of the directors of the said bank, and the said property was conveyed as a pledge to said Thomson as such director for the purpose of securing the payment of the said sum of $8,100, which George C. Jackson and Bernice W. Jackson borrowed from the said bank, and for no other purpose." It was further averred in the bill that the deeds do not contain the entire bargain between the parties ; that Thomson was to hold the title to the land and timber in trust, apply the proceeds of the timber and bark to his expenses and the payment of $8,100, and "reconvey to the grantors in said deeds, or their representatives, the balance of the property." Thomson in his answer alleged that at the time the deeds were delivered to him, the estate of George D. Jackson and also Bernice W. Jackson and George C. Jackson individually were largely indebted to him and to the bank, and that the real estate was conveyed to him in pursuance of an arrangment that he was to pay the indebtedness out of the proceeds of the property, and that while no agreement was made with the grantors in regard to what should be done with any balance of the proceeds of the sales, that after the payment of the indebtedness and compensation for his services he intended to "let said grantors have all that remains." He further says in his answer : "I deny that said conveyance was made to me for no other purpose than as collateral security for the payment of the said judgment. And I further deny that said conveyances were not made to me absolutely."

After consideration of the case on the bill, answer and proofs, the court entered a decree dismissing the bill.

It is difficult to see how there can be any serious dispute as to what the issue was in the equity case and what was deter-

mined by the adjudication. The bill averred that the deeds were executed and delivered to Thomson "upon the consideration and express agreement entered into by and between the said grantor and grantee therein named and the Citizens National Bank of Towanda, Pa., that the properties embraced in said deeds were not conveyed to the said grantee, absolutely, but that the same were pledged by the grantors, to him, the said grantee, as collateral security for the payment of eight thousand one hundred dollars." The answer denies that the conveyances were made to Thomson as collateral security and that they were not made to him absolutely. This was the issue raised by the pleadings and, of course, was the only issue which could be considered and determined by the trial court and by this court on appeal. It is true, as contended by the appellees, that the plaintiffs offered proof of fraudulent acts and that the trial court, in answer to points, found that the indebtedness to be paid Thomson from the proceeds of the property was the indebtedness against the estate of George D. Jackson and also the individual indebtedness of the executors, and that there was a valid consideration for each of the deeds. But these findings and proof of these facts were not material in determining the issue before the court, and hence as to those findings and facts, the decree was not conclusive: Sheble v. Strong, 128 Pa. 315, 323. The sole issue in the equity case, as shown by the pleadings, was whether the real estate was conveyed to Thomson absolutely or upon an express parol agreement to reconvey on the payment to him of the indebtedness of $8,100. The decree of the court dismissing the bill, therefore, adjudicated and determined that the real estate was conveyed to Thomson absolutely, and not upon an express agreement to reconvey, thereby converting the deeds into a mortgage.

As counsel of both parties have referred to the findings of fact and law and the opinion of the trial court and the opinion of this court to sustain their contention as to what was adjudicated in the equity case, we will also examine the opinion of this and the trial court which show what was involved and decided in that case. In his opinion in the equity case, the learned trial judge said: "The plaintiffs contend that they (deeds) do not contain the entire contract between the parties; that there was a parol agreement by which Thomson was to

hold the land, timber and bark in trust and as a pledge to secure the loans from the bank; Thomson to manage the property, peel and ship the bark, manufacture and sell the lumber, and, after deducting costs and expenses and a reasonable compensation to himself, to apply the balance to the indebtedness of $8,100 and its interest to the bank until it was paid; that he was from time to time to render accounts to the grantors and reconvey the property to them, or their legal representatives, when debts and costs were fully paid from the proceeds of the sales or otherwise. That there was an agreement to account and reconvey is denied by each defendant in a sworn answer, and thus the main question of fact arises." The learned judge then discusses at length the question whether there was a parol agreement to reconvey, concluding as follows : " Without evidence which, under the authorities, could be allowed to prevail against the plain terms of the deeds, we must find that the entire contract was embraced within their provisions and that no agreement to reconvey the lands was made at the time of their execution and delivery. As the above finding of fact is conclusive of the rights of the parties, so far as they have been presented for our consideration by the pleadings, a discussion of many of the questions argued by counsel is unnecessary." He then discusses the allegation that Thomson was the attorney and confidential adviser of the grantors in the deed, and says : " it is not charged in the bill and no relief was sought on that ground." The judge further says that in their written argument counsel raised the question of the power of the executors to convey the property of their testator to pay their individual debts and whether or not a resulting trust had not arisen as concerns these lands; but he declines to determine the question, saying : " This question is not raised by the pleadings and we do not feel called upon to decide it." The learned judge concludes his opinion as follows : " In the case as presented, there can be no relief to the plaintiffs from the contract as evidenced by the conveyances. If it be conceded that we are wrong in the fifth finding of fact, as we understand the law a reconveyance could not be decreed, for if the alleged parol agreement would have converted the deeds into mortgages the act of 1881 stands in the way; if it is sought thereby to establish a trust ex maleficio there is neither allegation nor

proof of any fraud perpetrated by Thomson on the grantors by which he procured the conveyances. The most that is and can be said is that Thomson refuses to carry out the terms of the parol contract. Such a fraud is no more than attends the violation of every agreement. Were this sufficient to establish a trust ex maleficio then would the act of 1856 be written in water."

In reviewing the case, Jackson v. Thompson, 203 Pa. 622, in this court it was said : " The court below very properly disposed of the case on the issues raised by the pleadings, and on this appeal we are likewise confined within the same limits." After stating the issues raised by the pleadings and that they were found in favor of the defendant, the opinion continues : " It is, therefore, found that the deeds conveyed the property absolutely as their terms purport to do and that they contain the entire contract between the parties. Unless we reverse these findings of fact by the learned judge, the plaintiffs are not entitled to the relief prayed for in the bill." In concluding, the opinion says : " We will conclude by saying, as suggested by the trial judge, that the allegation in the bill, if supported by the facts, would convert the deeds into mortgages with parol defeasances, incapable of enforcement by reason of the Act of June 8, 1881, P. L. 84, and that a trust ex maleficio is neither averred nor proved. It is entirely unnecessary to consider many of the questions suggested in the argument of the appellants. They are not raised by the pleadings nor involved in the issues presented here for determination."

This action is an ejectment for an undivided one-third interest in one of the tracts of land named in the bill filed in the equity case and the plaintiffs are privies in title with those in the equity case, and Thomson is the real defendant in both cases. On the trial of the cause, and after the plaintiffs proved title in their ancestor, the defendants offered in evidence the deed of July 9, 1897 to Thomson. They then offered in evidence the record of the equity case which, against the plaintiffs' objection, was admitted with this limitation : " So far as it is offered for the purpose of establishing that the thing in controversy here was adjudged in the former suit, only such things will be held to have been adjudged as were either directly or necessarily and materially involved in the equity issue, and

what those things are will be determined upon the offers of evidence made by the defense." The defendants having rested, the plaintiffs, in rebuttal, offered to show that Rush J. Thomson, one of the defendants, was the attorney and counsel of Bernice W. Jackson and George C. Jackson, as individuals and as executors of George D. Jackson's estate, and also was counsel for W. W. Jackson; that by reason of his being counsel and taking advantage of the confidential relations thus existing between the parties, he fraudulently obtained from George D. Jackson's executors the conveyances of July 9, 1897, without any consideration whatever; that no money was paid by Thomson for the conveyances and that there was no valid consideration moving from Thomson to the executors for the conveyance; and that the conveyance was made in fraud of the legal rights of the cestui que trust under the will of George D. Jackson. The defendants objected to the testimony for the reason that the matter embraced in the offer became res adjudicata by the decree in the equity suit. The objection was sustained and a verdict was directed for the defendants.

It will thus be seen that this action was brought to recover the premises in dispute on the ground that Thomson held the title and possession as a trustee ex maleficio. The learned court below so held, and, being of opinion that the question had been adjudicated in the equity suit, further held that it was res adjudicata, and the plaintiffs were concluded by the decree in that case. This, we think, was manifest error. In the former suit, the bill prayed for an accounting, for the payment of the surplus money over and above the amount required to discharge certain obligations, to secure the payment of which the real estate was conveyed to the defendant, Thomson, and for a reconveyance of the property to the plaintiffs. The prayers of the bill were refused, not only because the act of 1881 prevented the enforcement of the parol defeasance, but because it was found as a fact that Thomson had made no agreement to account or reconvey. The bill in that case did not directly nor inferentially aver the matters stated in the plaintiffs' offers of proof in this case and which convert Thomson into a trustee ex maleficio. The question raised by these offers, that Thomson was a trustee ex maleficio, need not have been and was not passed upon in the former suit, but on the contrary, as we have

pointed out, the court expressly declined to determine the question because it was not raised by the pleadings. If the question was injected into the case collaterally by the counsel of the parties, as was done, it did not thereby become res adjudicata : Hibshman v. Dulleban, 4 Watts, 183; Schwan v. Kelly, 173 Pa. 65; Duchess of Kingston's Case, 2 Sm. Lead. Cas.* 784. In the case last cited, Chief Justice DE GREY delivering the opinion said : "Neither the judgment of a concurrent or exclusive jurisdiction is evidence of any matter which came collaterally in question, though within their jurisdiction, nor of any matter incidentally cognizable, nor of any matter to be inferred by argument from the judgment." In Williams v. Row, 62 Pa. 118, Chief Justice THOMSON, speaking for the court, said (p. 122) : "I claim, that to be conclusive, the record must show the very matter claimed to have been passed upon, which is claimed to be concluded. That does not appear here. 'In order that a judgment in one action shall be conclusive in another, it must appear with convenient certainty, that the question in controversy in the second suit was litigated and decided in the first.' This is most fully illustrated by the case of Kelsey v. Murphy, already cited. The bill in that case, like this, was dismissed, and this was claimed to be an adjudication of the very question involved in the second suit; but this court dissected the bill, and showed, that while it was a similar claim in one aspect of the case, it was not so in all, and not conclusive."

In Kitchen v. Campbell, 3 Wilson, 304, the court said : "What is meant by the same cause of action is, where the same evidence will support both actions, although the actions may happen to be grounded on different writs ; this is the test to know whether a final determination in a former action is a bar, or not, to a subsequent action." The same principle is announced in 1 Greenleaf on Ev., sec. 528, and 1 Starkie on Ev. * 318, and is recognized and applied in Schriver v. Eckenrode, 87 Pa. 213. Applying this test to the case in hand it is apparent that the plea of former adjudication cannot be sustained, as the same evidence will not support a cause of action which requires proof of an express parol agreement to reconvey real estate and a cause of action which requires proof that the holder of the title to the real estate is a trustee ex maleficio. The one requires

proof, not of fraud in the grantee, but of an express contract which alone would entitle the party to recover; the other is established by proof of fraud of the grantee holding the title which converts him into a trustee for the beneficial owner.

Regarding the adjudication in the equity case as not a bar to the present action of ejectment, we must reverse the judgment of the court below.

The judgment is reversed, and a venire facias de novo is awarded.